## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

THOMAS D. HUGHES          )
                                 )
             Plaintiff,       )
                                 )
v.                              )     No.  07-CV-93-SAJ
                                 )
MICHAEL J. ASTRUE,        )
Commissioner of Social Security    )
Administration,             )
                                 )
             Defendant.   )

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Thomas D. Hughes ("Plaintiff"), appeals the decision of the Commissioner denying disability insurance benefits to him under Title II of the Social Security Act.  Plaintiff alleges that the ALJ erred by (1) stating in his decision that two surgeons had not listed any restrictions for Plaintiff; (2) failing to discuss parts of the consultative examiner's report that supported Plaintiff's complaints; (3) failing to mention or discuss certain medical evidence related to problems with Plaintiff's back, neck and hand; (4) relying on the residual functional capacity evaluation of the non-examining state agency physicians; and (5) failing to discuss and assess Plaintiff's pain as well as the side effects of his pain medication.  For the reasons discussed below, the Court hereby reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

Claimant was born on June 8, 1960, and was 46 years old at the time of the ALJ's decision. (*E.g.* R. 50, 372.)  He has an eleventh-grade education and a general equivalency diploma (R. 373.)  He has past relevant work experience as a general maintenance worker. (R. 106-07, 374-75, 395.)  He alleges that he became disabled on May 13, 2004, due to pain in his hands, lower back, neck, right shoulder, legs, and right knee. (*See* R. 81, 267, 371, 374-78, 393.)

Claimant protectively filed his application for disability insurance benefits on June 14, 2004.   (R. 50-53, 99, 371.)   After he was denied benefits at the initial and reconsideration levels, he filed a timely Request for Hearing.  Administrative Law Judge ("ALJ") Charles Headrick held a hearing on July 18, 2006 (see R. 368-98) and issued a denial decision on September 22, 2006. (R. 11-20).  Plaintiff filed a Request for Review with the Appeals Council, but the Appeals Council denied his request on January 17, 2007. (R. 6-8.)  He now seeks judicial review.

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).  A claimant is disabled under the

Social Security Act only if his

> physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work in the
> national economy, . . . .

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).[2/]

The Commissioner's disability determinations are reviewed to determine (1) if the

correct legal principles have been followed, and (2) if the decision is supported by

substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th

Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The Court, in

determining whether the decision of the Commissioner is supported by substantial

evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health*

*and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh

---

[2/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

3

the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750.

"The finding of the Secretary[3/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.  This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found, among other things, that Plaintiff had the following severe impairments: degenerative joint disease of the right shoulder, right knee and bilateral hands, status post shoulder surgery; and degenerative disc disease of the cervical spine and lumbar spine, status post cervical surgery. (R. 16.)  The ALJ also determined that

---

[3/]  Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

Plaintiff did not have impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) The ALJ assessed Plaintiff's residual functional capacity (RFC) as follows: lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking about 6 hours in an 8-hour day; sitting about 6 hours in an 8-hour day; and unlimited pushing and/or pulling with his upper and lower extremities. (R. 16-17.) The ALJ deemed Plaintiff capable of performing past relevant work as a general maintenance worker; alternatively, the ALJ found that other jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 18-19.) Accordingly, the ALJ concluded that Plaintiff had not been under a "disability" as defined in the Social Security Act, from May 13, 2004, through the date of the decision. (R. 20.)

## IV.  REVIEW

### A.      Disability Ratings

Plaintiff injured his neck and right shoulder at work on February 5, 2001, when he fell through some metal stairs that had rusted. (*See, e.g.,* R. 126, 148, 344.)[4] He had surgery to repair damage to his right shoulder and he was released to return to work with no restrictions on Jan. 29, 2002, and again on April 12, 2002. (R. 331-346.) The physician who treated his shoulder, David E. Nonweiler, M.D., found that Plaintiff had reached maximum medical improvement and gave him a 5% total permanent partial impairment to his upper extremity. (R. 331.)

---

[4] There is some indication in the record that Plaintiff may have injured his neck initially in March of 2000 when he rose up under a column and struck the top of his head. (*See* R. 132, 139.) However, that date appears to be a typographical error as that incident is recorded elsewhere as having occurred in March of 2002. (*See* R. 148.)

However, Plaintiff had reinjured his neck in March 2002 and was unable to work from April 2, 2002, until June 2, 2002 due to restrictions related to his neck. (*See* R. 148.) Despite steroid injections, his pain increased and he stopped working October 23, 2002. *Id.* In December 2002, had neck surgery. (*See* R. 130-185.) He was released to work on March 13, 2003, and given a full release on April 24, 2003, despite some restriction of neck motion, extension, and flexion. The physician who treated his neck, Benjamin G. Benner, M.D., gave Plaintiff a final combined rating of 29% to the person as a whole. (R. 149.)

Plaintiff argues that the ALJ erroneously stated in his decision that Dr. Nonweiler and Dr. Benner listed no restrictions for Plaintiff. Plaintiff points out that these two surgeons gave Plaintiff permanent disability ratings and specific limitations prior to the period in which Plaintiff claims disability. Plaintiff fails to note that, when Dr. Nonweiler, gave Plaintiff a 5% disability rating, he stated: "I think he is doing great. He is released from my care in regard to his shoulder. He has no work restrictions in regard to his shoulder." (R. 331.) The ALJ's decision accurately reflects Dr. Nonweiler's final report. (R. 18.) The ALJ was not required to discuss every aspect of the report. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

Similarly, the ALJ noted that Plaintiff had been given a full release without restrictions by Dr. Benner. (R. 18.) The ALJ also noted that Plaintiff was not taking any prescription medications for pain and denied numbness or tingling at the time of Dr. Benner's report, February 23, 2004. (R. 18; *see* R. 148-149.) These observations accurately reflect Dr. Benner's report, although Dr. Benner went into more detail about how he arrived at a 29% impairment rating for Plaintiff. (R. 149.) The ALJ did not err in his discussion of the medical evidence provided by Dr. Benner and Dr. Nonweiler.

6

**B.      Consultative Examiner's Report**

Plaintiff also argues that the ALJ erred by failing to discuss parts of the consultative examiner's report that supported Plaintiff's complaints.  Specifically, he faults the ALJ for failing to note that the consultative examiner's limitations for Plaintiff's neck extension and rotation.  (*See* R. 17, 18, 263.)  The ALJ discussed the findings of Steven Y.M. Lee, M.D. with regard to Plaintiff's right shoulder, back, straight leg raising, heel walking, toe walking, and  muscle strength.  (R. 17; *see* R. 258-64.)  He also noted Dr. Lee's assessment that Plaintiff had stiffness and pain of the neck and right shoulder as well as low back pain.  (*Id.*) Finally, he discussed Plaintiff's episodes of chest discomfort. (*Id.*)

Given this rather extensive discussion of Dr. Lee's report, the Court might be tempted to find harmless error in the ALJ's failure to specifically state why he found that limitations with regard to Plaintiff's neck extension and rotation were not disabling. However, as discussed below, the ALJ also failed to mention the findings of several other doctors with regard to Plaintiff's low back, carpal tunnel syndrome, and neck treatment.

**C.      Plaintiff's Back, Hand, and Neck**

Specifically, the ALJ failed to mention the 2001 findings of orthopedic physician Dr. David Hicks, M.D.  Dr. Hicks reported in August 2001, that he could not find evidence of a clear motor, reflex or sensory deficit in Plaintiff's lower extremities and no clear evidence of right lumbar radiculopathy.[5/]  (R. 351.)  He thought it was safe for Plaintiff to return to work in a full duty capacity.  However, Plaintiff points out that Dr. Hicks also found that he

---

[5/]  "Radiculopathy" is defined as "[a]ny diseased condition of roots of spinal nerves."  *Taber's Cyclopedic Medical Dictionary* 1665 (17th ed. 1993.)

had patchy numbness and hyperesthesia[6/] in all of his right leg, and an MRI finding of right L2-3 disc protrusion.  Dr. Hicks allowed Plaintiff to begin taking Vioxx again and asked to see Plaintiff again in another month to six weeks.  (*Id.*)

A month later, Plaintiff  returned, complaining of pain in his back and dysesthesias[7/] into his right leg, although there was no motor or reflex deficit in either lower extremity.  (R. 352.)  Dr. Hicks stated that he "had a long talk with this gentleman regarding the nature of the diagnosis, the alternative in care available to him, and a long term prognosis." (*Id.*) He stated that Plaintiff would continue with his exercises, continue with his Vioxx, and return after Plaintiff returned to work "full duty for about six weeks." (*Id.*)  Indeed, Dr. Hicks expressly stated that Plaintiff "may safely work full duty with respect to his lumbar spine." (*Id.*)

Plaintiff testified that Dr. Hicks suggested surgery for his lower back, but Plaintiff did not want surgery and opted, instead, for injections into his lower back.  (R. 386-87.)   After Plaintiff was evaluated by Dr. Hicks, he had his shoulder and neck surgeries.  Given Dr. Hicks' work release, the problems with Plaintiff's lower back would not seem disabling but for the fact that he continued to complain of lower back pain problems to Dr. Paul Battles, D.O.  Dr. Battles' records for Plaintiff are dated from May 30, 2000 through September 16, 2004.  (*See* R. 246-256.)  In his last two progress notes (August 9, 2004, and September 16, 2004), Dr. Battles noted that Plaintiff had "chronic back pain" that was "on-the-job

---

[6/]   "Hyperesthesia" is defined as "[i]ncreased sensitivity to sensory stimuli, such as pain or touch.  *Taber's*, at 934.

[7/]   "Dysesthesia" is defined as "[a]bnormal sensations on the skin, such as experiencing a feeling of numbness, tingling, prickling, burning, or cutting pain."  *Taber's*, at 590.

related."  (R 246-47.)  Dr. Battles added that Plaintiff "needs to either pursue a pain clinic or rehab."  (R. 246-47.)

Plaintiff testified that his low back pain went into both legs, although the pain was worse in the right leg.  He testified that the pain was "sharp" and "then it'll ease up for little bit and then [ ] just like electricity.  Just sharp."  (R. 376.)  He also testified that his right leg is constantly numb and goes out from under him twice a day.  (R. 387-88.)  The ALJ did not address the medical evidence and testimony related to Plaintiff's lower back pain other than to note the assessment of the consultative examiner, Dr. Lee, and to find that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment.  (*See* R. 16-17.)

Similarly, the ALJ failed to assess whether Plaintiff's hand impairment was disabling. An EMG report by Jodi Yelverton, M.D., on July 2, 2001 indicates that Plaintiff had an "abnormal right numb thumb by virtue of prolonged median peak latency." (R. 123.)  The EMG "demonstrate[d] a right median neuropathy at the wrist which can be consistent with carpal tunnel syndrome."  (*Id.*)  Dr. Hicks planned to refer Plaintiff to a specialist for carpal tunnel syndrom bilaterally.  (R. 124.)   The lack of any indication in the record that Plaintiff saw a specialist might counsel against a finding that Plaintiff's hand impairment is disabling, but the ALJ made no assessment.

Plaintiff testified that he had carpal tunnel syndrome and continuous pain in both of his hands, in addition to other impairments, kept him from working.  (R. 378.)  He described the problems with his hands as "[n]umbness, tingling continuous." (R. 389.)  The vocational expert testified that, if Plaintiff's testimony was considered credible and substantially verified by third party medical evidence in the record, he could not return to his past work because, in part, of the "loss of bilateral manual dexterity of the fingering and handling," in

addition to "feeling." (R. 397.)  The ALJ noted that Dr. Lee, the consultative examiner found

Plaintiff to have hand grip strength of 5+/5+ and was "able to manipulate small objects and

handle tools in either hand," (R. 18; *see* R. 259) but he did not link that to Plaintiff's

allegations that his carpal tunnel syndrome was disabling.

Finally, Plaintiff faults the ALJ for failure to discuss the records of Langley Medical

Clinic, where Plaintiff was treated between January 19, 2004 to May 2, 2006.  (R. 353-60.)

Although these records are difficult to read, they indicate, among other things, that Plaintiff

was diagnosed with degenerative disc disease, hypertension, and lower back pain due to

radiculopathy.  (R. 356, 358.)  He also had severe neck pain for a period of four days which

subsided before a return appointment.  (R. 361, 363.)  These records, while they do not

show that Plaintiffs' impairments were necessarily disabling, support Plaintiff's allegations

and should have been discussed by the ALJ.  The ALJ "is not required to discuss every

piece of evidence" in the record, but he must discuss "the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*,

79 F.3d at 1009-10 (citations omitted).[8]

## V.  CONCLUSION

---

[8]    Given the ALJ's failure to discuss the uncontroverted evidence upon which he chose not to rely, the Court finds no reason to address the remaining allegations of error, *i.e.*, that the ALJ erroneously  relied on the residual functional capacity evaluation of the non-examining state agency physicians and that the ALJ failed to discuss and assess Plaintiff's pain as well as the side effects of his pain medication.

The Commissioner's decision denying Plaintiff's application for Social Security benefits is not supported by substantial evidence.  Accordingly, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

It is so ordered this 1st day of April, 2008.

Sam A. Joyner
United States Magistrate Judge